# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. 08-11555 |
| ROBERT OREGON LONG, IV and JANICE LONG | SECTION "B" |
|     DEBTORS | CHAPTER 7 |

*****************************************************************

SYSCO FOOD SERVICES OF NEW
ORLEANS, LLC
    PLAINTIFF

VERSUS                                            ADVERSARY NO. 09-1085

ROBERT OREGON LONG, IV and
JANICE LONG
    DEFENDANTS

## MEMORANDUM OPINION

This matter came before the court on the complaint of the plaintiff, Sysco Food Services of New Orleans, LLC against the debtors, Robert and Janice Long, to except debts from discharge under 11 U.S.C. § 523(a)(2)(A) and § 523(a)(6). The parties agreed to submit the matter to the court on the stipulated facts and their briefs. For the reasons set forth below, the court finds that the debts are dischargeable.

### I.    Background Facts

The Debtor, Robert Long ("Long"), owned two franchises of WOW Café and Wingery in the Greater New Orleans Area. One franchise was incorporated as WOW Thing LLC ("WOW Thing"). The second was incorporated as WOW Bienville, LLC ("WOW Bienville"). The plaintiff, Sysco Food Services of New Orleans, LLC

("Sysco"), is a wholesale food distributor that delivers food and supplies to restaurants and other businesses.

Sysco provided food and supplies to both the franchises for several years. In 2007 Long wrote two checks in payment for food and supplies used in WOW Bienville, which were were returned by Hancock Bank for insufficient funds: check number 1683 dated 5/25/07 was for $5,068.1,1 and check number 1706 dated 6/1/07 was for $6,293.44.[1] It is not alleged that any representations were made by Long as to the checks, and there was no evidence presented that Long knew or should have known that there were insufficient funds in the bank to cover the checks.  After receiving notice of the dishonored checks, Long made representations to Sysco's credit manager and marketing associate that he would pay the checks.  Based on these representations, Sysco made deliveries to WOW Thing.  Long then diverted some goods from WOW Thing to WOW Bienville because Sysco would no longer supply to WOW Bienville due to the bad checks and past due balance.[2]  Later in 2007 Long sold his WOW franchises.  Long intended to pay Sysco with the proceeds from the sale and made representations to Sysco of his intentions; before he could do so, however, the funds from the sale were seized by judgment creditors.[3]

A suit was brought in the 24th Judicial District for the Parish of Jefferson in case number 651-522 Div. "E".  On March 3, 2008, a default judgment was entered against

---

[1] Stipulation, (P-14) at pp. 1-2.
[2] *Id.* at 2.
[3] *Id.*

2

Robert O. Long.[4] The portion of the judgment, attorney's fees, services charges and costs related to the issuance of the bad checks that Sysco seeks to have held non-dischargeable is $26,959.86 plus court costs.[5] Long failed to pay the judgment but instead filed a petition for relief under Chapter 11 of the Bankruptcy Code; the case was later converted to a Chapter 7 case. Sysco then filed this adversary proceeding seeking to except $26,959.86 of the judgment from dischargeability.[6]

## II. Legal Analysis

The plaintiff alleges that the debts are non-dischargeable under Sections 523(a)(2)(A) or 523(a)(6) of the Bankruptcy Code. Because the aim of the Bankruptcy Code is to give debtors a fresh start, discharge exceptions should be narrowly construed in favor of the debtor.[7] Therefore, the party asserting that a debt is non-dischargeable must prove its claim by a preponderance of the evidence.[8]

### A. Section 523(a)(2)(A)

Section 523(a)(2)(A) states:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt--

---

[4] Stipulation (P-14), Exhibit A. Although this adversary proceeding is against both Mr. and Mrs. Long, the 24th Judicial District Court judgment was only against Mr. Long and there is no evidence that Mrs. Long had anything to do with the writing of the checks, the promise to make the checks good or anything else to do with the business affairs that led to the debts. (See ¶s 9 10 of the Stipulations.) Therefore, the court will not consider the claims against Mrs. Long.

[5] The total amount of the default judgment seems to be $69,029.21.

[6] The exact amount Sysco asked to be declared non-dischargeable is not clear. The complaint recites that the total judgment is $69,029.21, however, the sum Sysco is interested in exempting from discharge is the two last paragraphs of the judgment, which total $26,959.86. That is the figure specifically mentioned in paragraphs 11 and 17 of Sysco's complaint. It goes without saying that the first paragraph of the default judgment has already been discharged by the order of September 23, 2009 ((P-117) in case no. 08-11555). In view of the court's holding that the debts are dischargeable, no further effort will be expended in trying to reconcile the exact amount Sysco seeks to have exempted from dischargeability.

[7] *In re Miller*, 156 F.3d 598, 602 (5th Cir. 1998).

[8] *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Keaty*, 397 F.3d 264 (5th Cir. 2005).

3

> ....
> (2) for money, property, services, or any extension, renewal, or refinancing of credit, to the extent obtained by--
> 	(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

To establish that a debt is non-dischargeable under 11 U.S.C. § 523(a)(2)(A), the creditor must prove that: (1) the debtor made a representation; (2) it was knowingly false; (3) it was made with the intent to deceive the creditor; (4) the creditor actually and justifiably relied on it; and (5) the creditor sustained a loss as a proximate result of the false representation.[9]

At issue are two separate "representations": Long's writing of bad checks and his assurances that he would pay the balance due. Standing alone, the writing of the bad checks is not actionable under 523(a)(2)(A). In *Williams v. US*, the Supreme Court concluded that a check is not a representation that the drawer currently has funds on deposit sufficient to cover the face value of the check.[10] Given the precedent of *Williams*, Sysco cannot sustain a section 523(a)(2)(A) claim based only on the writing of a check as a representation. As the Fifth Circuit found in *In re Mercer*:[11]

> Even assuming a check is a representation of sufficient funds, this would be a statement respecting financial condition, *not* actionable under § 523(a)(2)(A). In any event, the drawer does *not* request an extension of credit *from his bank*; instead; he draws on *his funds on deposit*. If they are *not* sufficient to cover the check, the bank will *not* honor it. Because the drawer is *not* seeking an extension of credit from his bank, he

---

[9] *In re Mercer,* 246 F.3d 391, 403 (5th Cir. 2001).
[10] *Williams v. U.S.*, 458 U.S. 279, 284-285, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982); *see also, In re Donelson*, 410 B.R. 495, 504 (Bankr. S.D. Tex. 2009).
[11] *Mercer,* 246 F.3d at 403.

4

>is *not* making a representation, by check-use, of intent to pay a loan from his bank.[12]

The analysis of the five factors from *Mercer* is unnecessary for the bad checks, as they are not representations.

Long's assurances that he would pay the balance do qualify as representations and should be subjected to the five factor analysis.

1. The debtor's representation

Fraud can be based on any type of conduct calculated to convey a misleading impression; thus, it is not relevant whether the representation is express or implied.[13] Long's assurances to Sysco's credit manager that he would get the money together to make the checks good qualify as representations for the purposes of 523(a)(2)(A).

2. The representation is false

A finding of fraud does not require an affirmative statement and may be predicated on a failure to disclose a material fact.[14] Bankruptcy courts have overwhelmingly held that a debtor's silence regarding a material fact can constitute a false representation actionable under Section 523(a)(2)(A).[15] Despite his efforts, Long was unable to make the checks good because the proceeds were seized by judgment creditors. His representation that he would make the checks good was false.

---

[12] *Id.* at 405.
[13] *In re Acosta*, 2003 WL 23109775 at *13 n.166 (E.D. La. 2003), *citing In re Wyant*, 236 B.R. 684, 695 (Bankr. D. Minn. 1999).
[14] *In re Docteroff*, 133 F.3d 210, 216 (3d Cir. 1997).
[15] *Acosta*, 2003 WL 23109775 at *13 n.166, citing *In re Docteroff*, 133 F.3d at 216; *In re Wyant*, 236 B.R. at 695.

3. Intent to deceive

The intent to deceive can be inferred from a "reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation."[16] If, however, the debtor made a representation that was based on a justifiably honest belief that it was true, then the representation was not made with the intent to deceive.[17]

Sysco has failed to prove that Long had no intention of paying the money to it and that Long intended to deceive. Counsel from both parties stipulated that Long intended to repay Sysco with the proceeds from the sale of his franchises.[18] Sysco has not shown that, at the time Long sold his franchise to pay the outstanding balance, Long knew or should have known that a third party would seize the funds. Thus, intent to deceive has not been proved by Sysco.

Counsel for Sysco claims that Long lied "to Sysco and himself about his situation."[19] The assertion that Long was lying to himself undermines the argument that Long intended to deceive Sysco.

4. Reliance

The reliance must be justifiable, not reasonable.[20] Proof of actual reliance, rather than reasonable reliance, is sufficient under section 523(a)(2)(A).[21] Sysco relied on

---

[16] *In re Norris*, 70 F.3d 27 (5th Cir. 1995).
[17] *In re Acosta*, 406 F.3d 367, 371 (5th Cir. 2005), citing *Palamacci v. Umpierrez*, 121 F.3d 781, 788 (1st Cir. 1997).
[18] Stipulation, p. 2.
[19] Plaintiff's Trial Memorandum (P-16), p. 7.
[20] *Field v. Mans*, 516 U.S. 59, 74-75 (1995).
[21] *Donelson*, 410 B.R. 495, 503, citing *Matter of Allison*, 960 F.2d 481, 485 (5th Cir. 1992).

Long's assurances that he would pay for the bad checks in continuing to do business with Long.

    5. <u>Loss</u>

Finally, the creditor must prove it sustained a loss as a proximate result of its reliance. Sysco was not compensated for the $11,361.55 total of the bad checks.

Long's debt does not satisfy the requirements for non-dischargeability under section 523(a)(2)(A) because Sysco failed to prove that Long intended to deceive Sysco.

    B. <u>Section 523(a)(6)</u>

Section 523(a)(6) excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." The Supreme Court has held that an injury is willful, causing non-dischargeability, where there is, "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury."[22] Although the plaintiff cites a pre- *Geiger* Fifth Circuit decision finding that "'willful' mean[t] intentional and 'malicious' mean[t] without just cause or excuse,"[23] there have been subsequent rulings by the Fifth Circuit that are consistent with the Supreme Court's ruling in *Geiger*.

Post *Geiger*, the Fifth Circuit's interpretation of § 523(a)(6) is that an injury is willful and malicious where the debtor had either an objective substantial certainty of causing harm or a subjective motive to cause harm to the injured party.[24] A willful and malicious injury results from an act performed with the intent to cause injury, not from an

---

[22] *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).
[23] *Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.,* 783 F.2d 480, 486 (5th Cir. 1986).
[24] *Miller*, 156 F.3d at 606.

7

act performed intentionally that results in injury.[25] Willfulness does not encompass negligence or recklessness.[26]

There is nothing to indicate that Long's writing of bad checks was done with the intent to harm Sysco. Under section 523(a)(6), the burden rested upon the party asserting non-dischargeability to prove that Long's actions were done with the intent to cause Sysco injury. Sysco offered no evidence to prove the requisite intent for this court to find the debts to be non-dischargeable. Counsel for both parties stipulated that "Defendant Robert O. Long, IV sold his WOW Franchises and intended to pay Sysco Foods, with the proceeds from the sale of these franchises."[27] The only statement about Long's intent in the record indicates that he intended to make Sysco whole, not that he intended to injure Sysco.

Long's actions do not fall within the class of actions which are non-dischargeable under section 523(a)(6).

## III. Conclusion

For the foregoing reasons, the court finds that the debt is dischargeable. Judgment will be entered in accordance with this opinion.

New Orleans, Louisiana, March 30, 2010.

_____
Jerry A. Brown
U.S. Bankruptcy Judge

---

[25] *State of Tex. By and Through Bd. of Regents of Univ. of Tex. Sys. v. Walker*, 142 F.3d 813, 823 (5th Cir. 1998); *Matter of Delaney*, 97 F.3d 800, 803 (5th Cir. 1996).
[26] *Miller*, 156 F.3d at 603.
[27] Stipulation, p. 2.